UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

PATRICK SHANE RAFFERTY,            )        Case No. 5:08CV1973
                                   )
            Petitioner,            )        JUDGE SARA LIOI
                                   )
        v.                         )        Magistrate Judge George J. Limbert
                                   )
STUART HUDSON, Warden,             )
                                   )
            Respondent.            )        **Report and Recommendation**
                                   )        **of Magistrate Judge**
                                   )
                                   )

 Petitioner Patrick Shane Rafferty ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF Dkt. #1. Petitioner seeks relief for alleged constitutional violations that occurred during his Summit County, Ohio Court of Common Pleas conviction for one count of Aggravated Murder in violation of Ohio Revised Code ("O.R.C.") § 2903.01(B) with a firearm specification pursuant to O.R.C. § 2941.145, two counts of tampering with evidence in violation of O.R.C. § 2924.12(A)(1), and one count of abuse of a corpse in violation of O.R.C. § 2927.01(B). ECF Dkt. #1; *see also* ECF Dkt. #8, Ex. 1, 2. On January 28, 2009, Respondent Stuart Hudson filed a Return of Writ. ECF Dkt. #8. On February 27, 2009, Petitioner filed a traverse. ECF Dkt. #10.

 The case was referred to the undersigned for a Report and Recommendation. ECF Dkt. #5. For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the petition in its entirety with prejudice due to a lack of merit:

## I. SYNOPSIS OF THE FACTS

 The Ninth District Court of Appeals of Ohio set forth the facts of this case on direct appeal.

These binding factual findings "shall be presumed to be correct", and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6 th Cir. 1998), *cert. denie*d, 119 S.Ct. 2403 (1999).  As set forth by the Ninth District Court of Appeals, the facts are:

{¶ 2} The tragic and gruesome events that occurred in early February 2005 read like a horror film. On February 5, 2005, a patrolman in West Virginia was called out to an open field near a farm house to investigate a report that a car had dumped something suspicious. Upon arriving, the officer noticed that the object that had been dumped was on fire. Once the fire department extinguished the flames, officers realized that the object was a badly burned human corpse. The head of the body had been removed and lay at the feet of the corpse. Thereafter, West Virginia authorities tried without success to identify the body.

{¶ 3} On August 7, 2005, Lisa Penix approached her cousin, Eric Berkheimer, an officer for the Mogadore Police Department. Penix described events that had occurred in the late evening of February 4, 2005. Penix described that she was at home on Voris Street in Akron, Ohio with Rafferty, William Kramer, Derek Shutt, Jason Keenan, and Steven Spade. Penix asserted that during the evening, Spade was murdered. Penix told Berkheimer that Rafferty had shot Spade in the head after beating him, that the body had been decapitated with a hacksaw, and that the body had been dumped in West Virginia and set on fire. Officers then contacted West Virginia, described Penix's account of events, and learned that West Virginia authorities had recovered a body in the condition described by Penix.

{¶ 4} As a result of Penix's confession and subsequent investigation, Penix, Kramer, Keenan, Shutt, and Rafferty were charged with numerous crimes. Kramer and Shutt eventually plead guilty to aggravated murder and numerous other crimes and the State in turn recommended that they not receive the death penalty. Penix went to trial for her crimes and was found guilty of aggravated murder, kidnapping, tampering with evidence, and abuse of a corpse. Keenan, meanwhile, agreed to testify truthfully and plead guilty to lesser crimes including tampering with evidence and obstruction of justice.

{¶ 5} Based upon the above, Rafferty was indicted on the following charges: one count of aggravated murder in violation of R.C. 2903.01 with a death penalty specification pursuant to R.C. 2929.04; one count of kidnapping in violation of R.C. 2905.01(A)(3); three counts of tampering with evidence in violation of R.C. 2921.12(A)(1); and one count of abuse of a corpse in violation of R.C. 2927.01(B).

{¶ 6} The matter proceeded to a jury trial. At the conclusion of his trial, Rafferty was found guilty of each of the charges against him. The matter then proceeded to a mitigation hearing. At the conclusion of that hearing, the jury recommended that Rafferty receive life in prison without the possibility of parole. The trial court, thereafter, sentenced Rafferty accordingly. Rafferty has timely appealed, raising seven assignments of error for review.

*State v. Rafferty*, Case No. 23217, 2007 WL 2255243 at *1 (Ohio App. 9 Dist., Aug. 9, 2007), unreported.

## II.     PROCEDURAL HISTORY

### A.     State Trial Court

On September 13, 2005, the Summit County, Ohio prosecuting attorney filed an indictment that had been returned by the Grand Jury, charging Petitioner with: (Count Three) Aggravated Murder in violation of O.R.C. § 2903.01(B), with a kidnapping specification pursuant to O.R.C. § 2929.04(A)(7) (Specification One to Count Three) and a firearm specification pursuant to O.R.C. § 2941.145 (Specification Two to Count Three); (Count Six) Kidnapping in violation of O.R.C. § 2905.01(A)(3); (Count Seven) Tampering With Evidence, to wit: miscellaneous clothing and a saw, in violation of O.R.C. § 2924.12(A)(1); (Count Eight) Tampering With Evidence, to wit: a handgun, in violation of O.R.C. § 2924.12(A)(1); (Count Nine) Tampering With Evidence, to wit: the basement of 447 East Voris Street, in violation of O.R.C. § 2924.12(A)(1); and (Count Ten) Abuse of a Corpse in violation of O.R.C. § 2927.01(B).  ECF Dkt. #8, Ex. 1.

On March 6, 2006, the case proceeded to a jury trial.  ECF Dkt. #8, Attach. #2-13 (trial transcript, hereinafter "Tr.").  On March 21, 2006, the jury convicted Petitioner of: (Count Three) aggravated murder, with both the kidnapping and the firearm specifications; (Count Six) kidnapping; (Counts Seven and Nine) two counts of tampering with evidence; and (Count Ten) abuse of a corpse. Tr. at 1589-93.  The jury acquitted him on Count Eight, tampering with evidence.  *Id*. at 1591.

The trial proceeded to the penalty phase, where the jury recommended life imprisonment.[1] The trial court then merged Petitioner's kidnapping conviction with his aggravated murder conviction.  ECF Dkt. #8, Ex. 2.  On April 10, 2006, the court sentenced Petitioner to: life imprisonment without the possibility of parole for the aggravated murder conviction in Count 3 and

---

[1]     The transcript does not appear to reflect the jury's recommendation; however, the trial court's journal entry does, and Petitioner does not challenge the fact that the jury recommended life imprisonment.  *See* ECF Dkt. #8, Attach. 14-16, Ex. 2.

three years of imprisonment for possession of a firearm to be served consecutively; four years of imprisonment for tampering with evidence as charged in Counts 7 and 9; and 12 months of imprisonment of abuse of a corpse as charged in Count 10.  *Id*.  The court ordered all of Petitioner's penalties to run consecutively pursuant to O.R.C. § 2929.14(E)(3).

**B.** **Direct Appeal**

On February 28, 2007, Petitioner filed a brief in support of his direct appeal, raising the following assignments of error:[2]

I. THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION FOR CHANGE OF VENUE, IN VIOLATION OF APPELLANT'S 6TH AND 14TH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

II. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF APPELLANT'S 6TH AND 14TH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

III. THE EVIDENCE IN THIS CASE WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT A CONVICTION OF AGGRAVATED MURDER AND AS A RESULT THE APPELLANT'S RIGHTS AS PROTECTED BY ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION WERE VIOLATED

IV. THE VERDICTS IN THIS CASE WERE AGAINST THE MANIFEST WEIGHT EVIDENCE (SIC) AND AS A RESULT, APPELLANT'S RIGHTS AS PROTECTED BY ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION WERE VIOLATED.

V. CONSIDERED TOGETHER, THE CUMULATIVE ERRORS IN THE TRIAL DEPRIVED THE APPELLANT OF A FAIR TRIAL IN VIOLATION OF APPELLANT'S 6TH AND 14TH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

VI. PROSECUTORIAL MISCONDUCT DEPRIVED THE APPELLANT OF A FAIR TRIAL, IN VIOLATION OF APPELLANT'S 6TH AND 14TH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

---

[2] It appears that Respondent has not furnished Petitioner's notice of appeal.  Although Respondent has not raised a procedural barrier as a defense in the instant case, counsel is advised to furnish certificates of appeal in future cases for the sake of completeness.

VII.     THE APPELLANT ALLEGES THAT CONDUCT BY THE TRIAL JUDGE AMOUNTED TO JUDICIAL MISCONDUCT WHICH DEPRIVED THE APPELLANT OF A FAIR TRIAL IN VIOLATION OF APPELLANT'S 6TH AND 14TH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

ECF Dkt. #8, Ex. 3.

On August 8, 2007, the Ohio Court of Appeals for the Ninth District denied the appeal and affirmed the trial court's judgment.  ECF Dkt. #8, Ex. 4.

**C.     Motion to Reconsider Judgment Pursuant to Appellate Rule 26(A)**

On August 22, 2007, Petitioner filed a motion with the Ninth District Court of Appeals to reconsider its judgment.  ECF Dkt. #8, Ex. 8.  Petitioner argued the following bases :

1.     The Biased And/Or Tainted Jury

2.     Further Deficient Conduct By Trial Counsel

ECF Dkt. #8, Ex. 8.

On August 27, 2007, the court denied the motion because it was filed more than ten days after the court had entered its order.  ECF Dkt. #8, Ex. 9.

**D.     Supreme Court of Ohio**

On September 14, 2007, Petitioner, pro se, filed a notice and brief in support of jurisdiction in the Supreme Court of Ohio, raising the following propositions of law:[3]

I.     The trial court abused its discretion by denying Appellant's motion for a change of venue, in violation of his 6th and 14th Amendment rights under the U.S. Constitution and Art. I, Sect. 10 of the Ohio Constitution.

II.     Appellant was denied effective assistance of counsel, in violation of his 6th and 14th Amendment rights under the U.S. Constitution and Art. I, Sect. 10 of the Ohio Constitution.

III.     The evidence in this case is insufficient as a matter of law to support a conviction of aggravated murder and as a result, Appellant's rights as protected by Art. I, Sect. 16 of the Ohio Constitution and the 5th Amendment of the U.S. Constitution were violated.

IV.     The verdicts in this case were against the manifest weight of the evidence and as a result, Appellant's rights as protected by Art. I, Sect. 16 of the Ohio

---

[3]     Again, it appears that Respondent has not furnished Petitioner's notice of appeal. *See supra* note 2.

Constitution and the 5th Amendment of the U.S. Constitution were violated.

V.  The cumulative errors, combined together, in the trial deprived Appellant of a fair trial in violation of his 6th and 14th Amendment rights under the U.S. Constitution and Art. I, Sect. 10 of the Ohio Constitution.

VI.  Prosecutorial misconduct deprived Appellant of a fair trial, in violation of his 6th and 14th Amendment rights under the U.S. Constitution and Art. I, Sect. 10 of the Ohio Constitution.

VII.  The conduct by the trial judge amounted to judicial misconduct which deprived Appellant of a fair trial in violation of his 6th and 14th Amendment rights under the U.S. Constitution and Art. I, Sect. 10 of the Ohio Constitution.

ECF Dkt. #8, Ex. 5.  On December 12, 2007, the Supreme Court of Ohio dismissed the appeal as not involving a substantial constitutional question.  ECF Dkt. #8, Ex. 7.

**E.  Application to Reopen Appeal Pursuant to Appellate Rule 26(B)**

On October 30, 2007, Petitioner filed an application with the Ninth District Court of Appeals, seeking to reopen his appeal pursuant to Ohio Rule of Appellate Procedure 26(B).  ECF Dkt. #8, Ex. 10.  Petitioner argued that appellate counsel was ineffective for failing to raise the following assignments of error:

1.  Appellant was denied effective assistance of trial counsel, in violation of his Sixth and Fourteenth Amendment Rights under the United States Constitution and Article I, Section Ten of the Ohio Constitution.

    a.  Failure to enhance exculpatory video.

    b.  Failure to use exculpatory forensic medical evidence.

    c.  Failure to call witnesses.

    d.  Trial counsel harassed the jury.

    e.  The conflicting codefendants' statements were not entered into evidence.

    f.  Counsel failed completely in its duty to impeach Penix based on her previous statement.

2.  Appellant was denied the right to a fair and impartial jury in violation of the Sixth Amendment of the United States Constitution and Article I, Section 5 of the Ohio Constitution.

3.  The conduct by the trial judge amounted to judicial misconduct which deprived appellant of a fair trial in violation of his Sixth and Fourteenth Amendment rights under the United States Constitution and Article I, Section 10 of the Ohio Constitution.

*Id.* The court of appeals denied Petitioner's motion, finding that appellate counsel's performance did not fall below an objective standard of reasonableness.[4]  ECF Dkt. #8, Ex. 11.

On December 10, 2007, Petitioner filed an appeal from the Ninth District's ruling with the Supreme Court of Ohio.  ECF Dkt. #8, Ex. 12.  Petitioner raised the following proposition of law:

> Proposition of Law No. I:     The Court of Appeals erred in denying Appellant's App. R. 26(B) reopening when he demonstrated a "genuine issue" of ineffective assistance of appellate counsel in violation of the 14th Amendment of the U.S. Constitution and Art. I, sect. 10 of the Ohio Constitution.

*Id.* On February 26, 2008, the Supreme Court of Ohio dismissed Petitioner's appeal as not involving any substantial constitutional question.  ECF Dkt. #8, Ex. 13.

### F.     28 U.S.C. § 2254 Petition

On August 8, 2008, Petitioner filed the instant petition for a writ of habeas corpus.  ECF Dkt. #1; *see Towns v. U.S.*, 190 F.3d 468, 469 (6th Cir. 1999) citing *Houston v. Lack*, 487 U.S. 266, 270-74 (1988) (a *pro se* prisoner's petition is considered to be filed on the day he delivers it to prison authorities).[5]  Petitioner has raised the following grounds for relief:

> **Ground one:**  The State Court of Appeals Erred in Denying Petitioner's App.R. (26)(B) reopening when he demonstrated a "genuine issue" of ineffective assistance of appellate counsel in violation of the 6th and 14th Amendments."
>
> > **Supporting Facts:** The Court of Appeals issued a near boiler-plate denial of Petitioner's reopening. The court erred in failing to grant a reopening when appellate counsel failed to raise issues of trial counsel's deficient conduct, failed to argue juror bias, for weakly arguing the trial judge committed misconduct, and in finding that exculpatory evidence not raised by trial or appellate counsel did not matter.
>
> **Ground two:** The Ninth District Court of Appeals Violated Petitioner's Rights to Due Process and Equal Protection under the 5th and 14th Amendments of the U.S.

---

[4]     The date of the court's order is illegible.

[5]     Although Respondent does not raise the AEDPA statute of limitations as a defense, the undersigned notes that Respondent's brief incorrectly represents the filing date of the petition as August 14, 2008.  ECF Dkt. #8 at 7.  The undersigned further notes that a district court may raise the AEDPA statute of limitations sua sponte:"[D]istrict courts are permitted, but not obliged, to consider, sua sponte, the timeliness of a state prisoner's habeas petition." *Day v. McDonough*, 547 U.S. 198, 209 (2006).  Accordingly, counsel should be careful to reflect the correct filing date in briefs, even when the AEDPA statute of limitations has not been raised by a party.

Constitution by Not Ruling on His App.R. (26)(A) Application for Reconsideration.

**Supporting Facts:** The court of appeals has not decided Petitioner's 26(A) Application for Reconsideration that was filed in that court a year ago. It appears the court does not intend to ever rule on it.

**Ground three:** The Trial Court Abused Its Discretion by Denying Petitioner's Motion for a Change of Venue, in Violation of his 6th and 14th Amendment Rights under the U.S. Constitution.

**Supporting Facts:** Petitioner was subjected to an unfair and partial trial because the jury was prejudiced by pretrial media publicity and was biased due to its connections with the prosecution and the victim's family.

**Ground four:** The Petitioner was Denied Effective Assistance of Trial Counsel in violation of His 6th and 14th Amendment Rights Under the U.S. Constitution.

**Supporting Facts:** Trial counsel's conduct fell below basic standards of assistance. If not for counsel's professional errors, the result of the trial would have likely been different.

**Ground five:** The Evidence Presented at Trial was Insufficient as a Matter of Law to Support a Conviction of Aggravated Murder and as a Result, Petitioner's Right to Due Process Under the 5th and 14th Amendments of the U.S. Constitution were Violated.

**Supporting Facts:** The conviction for agg. murder was based solely on the inconsistent testimony of co-defendants, with no physical evidence to support a conviction.

**Ground six:** The Verdicts in this Case Were Against the Manifest Weight of the Evidence and as a Result, Petitioner's Right to Due Process under the 5th and 14th Amendments of the U.S. Constitution were Violated.

**Supporting Facts:** There was no physical evidence presented to prove Petitioner's guilt. The only evidence presented was testimony by co-defendants who had a strong motivation to lie.

**Ground seven:** The Cumulative Errors, Considered Together, in the Trial Deprived Petitioner of a Fair Trial in Violation of his 6th and 14th Amendment Rights under the U.S. Constitution.

**Supporting Facts:** The cumulative errors in the trial resulted in Petitioner being convicted of agg. murder without any reliable evidence that he had the requisite intent to cause the death of another or was in fact the principal offender in the commission of this crime.

**Ground eight:** Prosecutorial Misconduct Deprived Petitioner of a Fair Trial in Violation of his 6th and 14th Amendments under the U.S. Constitution.

**Supporting Facts:** The prosecutor went outside his wide latitude during closing arguments and misstated evidence to Petitioner's detriment.

**Ground nine:** The Trial Judge Committed Judicial Misconduct Which Deprived Petitioner of a Fair Trial in Violation of his 6th and 14th Amendment Rights Under the U.S. Constitution.

**Supporting Facts:** The trial judge was biased and fundamentally unfair throughout the trial by limiting the amount of time the trial would last so she could make her eye doctor appointment; by making non-verbal gestures mocking the defense; by speaking to the defense counsel in a harsh tone, and; favoring the prosecution.

ECF Dkt. #1.  On January 28, 2009, Respondent Stuart Hudson filed a Return of Writ.  ECF Dkt. #8.  On February 27, 2009, Petitioner filed a traverse.  ECF Dkt. #10.

## III.    PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).  Respondent does not raise any procedural defenses to the instant petition.  *See* ECF Dkt. #8.  Further, the Supreme Court has held that it would be in the interests of the parties and the courts for the merits of a petition to be addressed forthwith if it is clear that the applicant does not even raise a colorable federal claim. *Granberry v. Greer*, 481 U.S. 129, 135 (1987); *Prather v. Rees*, 822 F.2d 1418, 1421-22 (6th Cir. 1987) (lack of exhaustion was properly excused where petition was plainly meritless, the state had not addressed exhaustion, and disposition of the case would not offend federal-state comity).  Accordingly, it is unnecessary to further discuss the potential procedural barriers for § 2254 petitions as they may apply to the case at bar.

## IV.    STANDARD OF REVIEW

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 on February 26, 2007, well after the act's effective date of April 26, 1996.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).  Under Section 2254, a state prisoner is entitled to relief if he

is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus.  The AEDPA provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> > (1)  resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

A.      Decisions of lower federal courts may not be considered.

B.      Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C.      The state court decision may be overturned only if:

      1.      It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

      2.      the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

      3.      'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

      4.      the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.      Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.      Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986).  The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

-11-

(e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## V.    ANALYSIS

Respondent contends that all of Petitioner's proposed Grounds for Relief lack merit, and "[f]or the purposes of clarity and overall structure" addressed Petitioner's claims out of order.  ECF Dkt. #8 at 9.  In order to avoid any confusion, the undersigned will follow the order of issues in Respondent's brief, as it appears to be logical and Petitioner's traverse also follows that same order. *See* ECF Dkt. ##8, 10.

### A.    (Ground Two) Whether the Court of Appeals has Ruled on Petitioner's App. R. 26(A) Motion.

Petitioner contends that the Ninth District Court of Appeals violated his Due Process and Equal Protection rights under the 5th and 14th Amendments to the United States Constitution by not ruling on his Rule 26(A) motion for reconsideration of its judgment. ECF Dkt. #1 at 8.  Upon review of the Ninth District Court of Appeals' order of August 27, 2007, it appears that the court has ruled upon Petitioner's motion.  ECF Dkt. #8, Ex. 9.  Regardless, Petitioner contends that the appellate court improperly denied his motion because he placed his motion for reconsideration in the prison mail box in a timely manner, evidenced by the certificate of service.  Petitioner's Second Ground for Relief still lacks merit, as discussed below.

-12-

Turning first to Petitioner's Due Process claim, the undersigned notes that Petitioner does not identify the specific Due Process right that he believes to have been violated.  *See* ECF Dkt. #1 at 8. Even so, "a mere error of state law is not a denial of due process." *Engle v. Isaac,* 456 U.S. 107, n. 21 (1982) (internal quotation omitted).  Further, "[t]he Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but 'the fundamental elements of fairness in a criminal trial.' " *Rivera v. Illinois*, ___ S.Ct. ___, 2009 WL 815033 at *1( March 31, 2009), slip op., syllabus quoting *Spencer v. Texas,* 385 U.S. 554, 563-564 (1967).

Here, Petitioner cannot demonstrate that he has been denied due process of the law because he has failed to demonstrate that an error of state procedural law has occurred.  The Ninth District Court of Appeals entered judgment affirming Petitioner's conviction on August 8, 2007.  ECF Dkt. #8, 2007.  Pursuant to Ohio Rule of Appellate Procedure 26(A), Petitioner had to file his motion within ten days of August 8, 2007:

> Application for reconsideration of any cause or motion submitted on appeal shall be made in writing before the judgment or order of the court has been approved by the court and filed by the court with the clerk for journalization or within ten days after the announcement of the court's decision, whichever is the later.

Ohio App. R. 26(A).  Petitioner notes that he delivered his motion to prison officials on 7-13-07, but this statement is apparently a typographical error, as the certificate of service indicates that it was mailed on August 13, 2007.  ECF Dkt. #8, Ex. 8 at 2.  Yet, Petitioner fails to demonstrate that the Ohio Court of Appeals erred in applying Ohio procedural law because his reliance on the prison mailbox rule is misplaced.

Ohio Rule of Appellate Procedure 13(A) provides that "Filing may be accomplished by mail addressed to the clerk, **but filing shall not be timely unless the documents are received by the clerk within the time fixed for filing**, except that briefs shall be deemed filed on the day of mailing."  Ohio App. R. 13(A) (emphasis added).  Further, the Supreme Court of Ohio and several appellate courts have expressly rejected the use of the prison mailbox rule.  *State ex rel. Tyler v.*

-13-

*Alexander*, 555 N.E.2d  966 (Ohio 1990); *State v. Williams*, 811 N.E.2d 561, 563, 564  (Ohio App.

8 Dist. 2004) (holding that the difference between a notice of appeal (addressed in *Tyler*) and a post-

conviction petition has no bearing on the applicability of the prison mailbox rule); *State v. Buckwald*,

No. 98CA007267, 2000 WL 1859845 at *1 (Ohio App. 9 Dist., Dec. 20, 2000), unreported ("There

is no prison mailbox rule in Ohio.").  Since Petitioner's motion was not time-stamped until August

22, 2007, Petitioner cannot show that the Ohio Court of Appeals erred as a matter of state procedural

law in denying his motion as untimely, and his due process claim based upon that assertion should

fail.

      Turning next to Petitioner's Equal Protection claim, the United States Constitution states: "No

state shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S.

Const. amend. XIV, § 1.  In order to state a claim for a violation of the Equal Protection Clause,

Petitioner must demonstrate that a discrimination of some substance has occurred against him and

has not occurred against other individuals who were similarly situated.  *See City of Cleburne, Texas

v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Clements v. Flashing,* 457 U.S. 957, 967

(1982).  Petitioner has not alleged that any similarly situated defendants have received favorable

treatment that he did not receive.  Consequently, he has made no showing of discriminatory treatment

and the Court should dismiss Ground Two of the instant petition, with prejudice, insofar as it relates

to allegedly unequal application of Ohio Rule of Appellate Procedure 26(A).

      For the foregoing reasons, the undersigned recommends that eh Court dismiss Ground Two

in its entirety with prejudice.

    **B.**    **(Ground Three) Whether the trial abused its discretion in denying Petitioner's
motion for a change of venue.**

      Petitioner contends that his 6th and 14th Amendment rights were violated when the trial court

denied his motion for a change of venue.  ECF Dkt. #1 at 9.  Petitioner reasons that he was subjected

to an unfair trial because the jury was prejudiced by pretrial publicity and was biased due to its

connections with the prosecution and the victim's family.  *Id*.  In his traverse, Petitioner goes on to

argue that the case involved a very gruesome murder that resulted in publicity.  ECF Dkt. #10 at 3.

-14-

He contends that the public and the jury were subjected not only to the regular press but to internet and special interest coverage as well as posters and flyers on the courthouse walls regarding the case. *Id*.

The Sixth Amendment  to the United States Constitution provides in its pertinent part that "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed. . ." U.S. Const. amend. VI.   Further, the Fourteenth Amendment to the United States Constitution provides in its pertinent part "nor shall any state deprive any person of life, liberty, or property, without due process of law. . . ." U.S. Const. amend. XIV, § 1.  If prejudicial pretrial publicity jeopardizes a defendant's right to a fair trial by an impartial jury, the court should grant the defendant a change in venue. *Irvin v. Dowd*, 366 U.S. 717, 722-24 (1961); *Ritchie v. Rogers*, 313 F.3d 948, 956 (6th Cir. 2002). Prejudice resulting from pretrial publicity can be either presumptive or actual. *Nevers v. Killinger*, 169 F.3d 352, 362 (6th Cir. 1999), *abrogated on other grounds*, *Harris v. Stovall*, 212 F.3d 940, 942-43 (6th Cir. 2000).

Presumptive prejudice from pretrial publicity occurs in a case where "the trial atmosphere has been utterly corrupted by press coverage," *White v. Mitchell*, 431 F.3d 517, 531 (6th Cir.), *cert. denied*, 127 S. Ct. 578 and 581 (2006), or an inflammatory, circus atmosphere pervades both the courthouse and the surrounding community. *Ritchie*, 313 F.3d at 952-53; *Gall v. Parker*, 231 F.3d 265, 309 (6th Cir. 2000); *Nevers*, 169 F.3d at 362- 63; *DeLisle v. Rivers*, 161 F.3d 370, 382 (6th Cir. 1998) (en banc). For this presumption to apply, the trial must be entirely lacking in the solemnity and sobriety required of a system that subscribes to any notion of fairness and rejects the verdict of a mob. *Gall*, 231 F.3d at 310; *Nevers*, 169 F.3d at 363. "The category of cases where prejudice has been presumed in the face of juror attestation to the contrary is extremely narrow. Indeed, the few cases in which the Court has presumed prejudice can only be termed extraordinary[.]"  *DeLisle*, 161 F.3d at 382.  "[I]t is well-settled that pretrial publicity itself-even pervasive, adverse publicity-does not inevitably lead to an unfair trial[.]" *Id*. (internal quotation omitted).  The Sixth Circuit has stated that

it would be "impossible to achieve" the goal of empaneling juries with no knowledge of the existence of a case, a familiarity with the issues involved, or even some preexisting opinion as to the merits, and that knowledge does not in and of itself raise a presumption of jury taint. *Id*. The *DeLisle* court pointed to the Supreme Court's holding and supporting observations in *Irvin*:

> It is not required ... that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Id*. quoting *Irvin*, 366 U.S. at 722-23.

In a case where pretrial publicity cannot be presumed to be prejudicial, the trial court still must determine whether the publicity rises to the level of actual prejudice. *Ritchie*, 313 F.3d at 962. The primary tool for determining if actual prejudice has occurred is a searching voir dire of prospective jurors. *Id*. Negative media coverage by itself is insufficient to establish actual prejudice, *Nevers*, 169 F.3d at 366-67, and the existence of a juror's preconceived notion as to the guilt or innocence of the defendant, without more, is not sufficient to rebut the presumption of a prospective juror's impartiality. *White*, 431 F.3d at 531-32; *Nevers*, 169 F.3d at 367. Instead, to establish prejudice, the prospective juror must be unable to lay aside his or her impressions or opinions and render a verdict based upon the evidence presented in court. *White*, 431 F.3d at 532; *Ritchie*, 313 F.3d at 962. "A trial court's finding of juror impartiality may only be overturned where manifest error is present." *White*, 431 F.3d at 531 citing *Mu'Min v. Virginia*, 500 U.S. 415, 428 (1991). The reviewing court asks " 'not whether the community remembered the case, but whether the jurors . . . had such fixed opinions that they could not judge impartially the guilt of the defendant.' " *White*, 431 F.3d at 531 quoting *Patton v. Yount*, 467 U.S. 1025, 1035 (1984).

As Respondent notes, the state appellate court found that the trial court conducted a voir dire over a two day period that resulted in 800 pages of transcripts, and that each of the jurors who were seated swore that they could fairly judge the case solely on the facts presented at trial.  ECF Dkt. #8, Ex. 4 at 4.  Petitioner has failed to meet his burden of showing that the state trial court or appellate court proceedings  resulted in a decision that was contrary to or involved an unreasonable application of clearly established Federal law.  Petitioner points to no portions of the transcript and no extrinsic evidence showing that his constitutional rights have been violated.  Consequently, the undersigned recommends that the Court dismiss Ground Three of the petition with prejudice.

### C.        (Ground Four) Whether Petitioner received ineffective assistance of trial counsel

Petitioner contends that his 6th and 14th Amendment rights under the United States Constitution were violated when he received ineffective assistance of trial counsel.  ECF Dkt. #1 at 11.  Petitioner contends that trial counsel's conduct fell below basic standards of assistance, and but for these professional errors, the results of the trial would have been different.  *Id*.  The petition, however, fails to identify specifically what errors Petitioner contends trial counsel made.  *See id*.  In his traverse, Petitioner argues that trial counsel was ineffective for: (1) failing to get a surveillance video from a BP gas station enhanced, which would have shown that Petitioner was not in the car police identified as the vehicle that disposed of the victim's body in West Virginia; (2) failing to cross examine a state witness who said that the tape could not be enhanced; and (3) failing to seek out and call several witness would could have impeached state witnesses.

In order to prevail on a claim of ineffective assistance of trial counsel, Petitioner bears the burden of showing that counsel's performance fell below an objective standard of reasonableness and counsel's ineffectiveness prejudiced his defense so as to deprive him of his right to a fair trial. *Strickland v. Washington*, 466 U.S. 668 (1984).  To warrant reversal of a conviction, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  Court scrutiny of defense counsel review must be "highly deferential." *Id*. at 689. Decisions that "might be considered

sound trial strategy" do not constitute the ineffective assistance of counsel. *Michel v. Louisiana*, 350 U.S. 91, 101 (1955).   Trial counsel's tactical decisions are not completely immune from Sixth Amendment review, but they must be particularly egregious before they will provide a basis for relief. *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984).

Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996), quoting *Strickland,* 466 U.S. at 691, quoted in *Smith v. Jago*, 888 F.2d 399, 404-05 (6th Cir.1989), *cert. denied*, 495 U.S. 961 (1990).   "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir.1992) (en banc), *cert. denied*, 508 U.S. 975 (1993).

### (1)    Surveillance video

With regard to Petitioner's contention that trial counsel was ineffective for failing to obtain an enhanced version of the BP surveillance video, Petitioner has failed to demonstrate a factual basis for his contention.   Even assuming that an objective level of reasonableness required trial counsel to obtain an enhanced surveillance video, Petitioner has simply produced no evidence and pointed to no indications on the record that would support a finding that trial counsel failed to meet that standard.   Further, the simple fact that trial counsel did not introduce an enhanced copy of the video at trial does not necessarily mean that he never obtained one.   It is conceivable that counsel obtained an enhanced video  and chose not to use it for strategic purposes.

Further, Petitioner cannot show that trial counsel's performance had a prejudicial effect on his case.   Without producing an enhanced copy of the video showing this Court that the video could in fact be enhanced and that the enhanced version would have affected the outcome of his trial, Petitioner cannot establish that trial counsel's performance had any prejudicial effect, even if it was deficient.

Additionally, the undersigned notes that Petitioner first raised this purported deficiency in his traverse, leaving Respondent no opportunity to respond.  Petitioner did not claim on direct appeal to the Ninth District Court of Appeals that trial counsel was ineffective for failing to enhance the video.  *See* ECF Dkt. #8, Ex.3 at 12-16.  It appears that Petitioner first raised the issue of the enhanced video in his motion to reconsider judgment pursuant to Rule 26(A), when he claimed that appellate counsel was ineffective for failing to argue trial counsel's ineffectiveness for failing to enhance the surveillance video.  ECF Dkt. #8, Ex. 8.  That motion, however, does not appear to have been properly filed for procedural default purposes, because it was untimely, as discussed above.  *See supra* § IV.(A).  It appears that Petitioner raised the issue pertaining to enhancing the video on his appeal to the Supreme Court of Ohio.  ECF Dkt. #8, Ex. 5 at 9 ("They never even attempted to show the tape to the jury and allowed the prosecutions witness, Det. Harrah, to just relate that the video was no good.").  Of note, a federal court may review federal claims:

> that were evaluated on the merits by a state court. **Claims that were not so evaluated,** either because they were never presented to the state courts (i.e., exhausted) or **because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.**

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004).  Since Petitioner did not raise the issue at his first opportunity on direct appeal to the Ninth District Court of Appeals and he has not addressed the issue here until his traverse, Respondent should have an opportunity to raise a procedural default defense.

Accordingly, the undersigned recommends that the Court dismiss Ground Four due to a lack of merit insofar as it relates to trial counsel's failure to obtain an enhanced copy of the surveillance video, or in the alternative, afford Respondent an opportunity to raise a procedural default defense.

### (2)  Cross-examination of state's witness

In alleging that trial counsel failed to cross examine a state's witness, Petitioner fails to even identify the witness that trial counsel allegedly failed to sufficiently cross examine.   *See* ECF Dkt.

-19-

#1 at 11; ECF Dkt. #10 at 4-5.  Upon review of the record, the undersigned believes that Petitioner is referring to the testimony of Detective Frank Harrah of the Akron Police Department.  Detective Harrah testified that he received the BP surveillance video from the Wood County Sheriff's Department.  Tr. at 955.  During direct examination, the following testimony was elicited from Detective Harrah:

> Q:  So once you retrieved that DVD, what did you do with it?
>
> A:  One, I had some – I had a copy made of it to make sure we had one that could be put into evidence.  Two, we submitted it to the local individual that we use from NASA to see if there was some way to clarify it so we would be better able to see what we had.
>
>                                          *      *      *
>
> Q:  Were you able to, through this video or through the person who actually tried to clean it up some, were you able to find or get a license plate at all?
>
> A:  We were not.
>
> Q:  Okay.  And specifically, were you able to identify anybody getting in or out of that vehicle?
>
> A:  No, not specifically, we were not.
>
> Q:  And what bout inside – I know the jurors had a difficult time probably seeing it.  What about inside the BP gas station, as you look at it, do you see anything, identification about any of the folks coming in and out?
>
> A:  Not specifically.

Tr. at 956, 961-62.  Again, Petitioner cannot establish that trial counsel's performance had any prejudicial effect because he has failed to produce an enhanced copy of the video showing that it could in fact be enhanced and that the enhanced version would have affected the outcome of his trial.

Further, trial counsel did cross examine Detective Harrah regarding the quality of the video.  Petitioner cannot show that counsel's strategy was so unreasonable as to warrant habeas relief.

-20-

"Generally, trial strategy and tactics are not cognizable in a federal habeas corpus proceeding." *Comer v. Parratt*, 674 F.2d 734, 737 (8th Cir.1982).   In so doing, it appears that he attempted to raise reasonable doubt by establishing that: the video quality was so poor that one of the co-defendants couldn't identify himself; there were other vehicles at the gas pumps and the occupants of those vehicles were in the store at the same time as the occupants of the suspect's vehicle; and Detective Harrah himself could not identify anybody on the tape. Tr. at 983-85.  In fact, trial counsel discussed reasonable doubt during his closing argument.  *See* Tr. at 1513-15.  And he specifically discussed how reasonable doubt surrounded the surveillance video:

> One of the things about this case is the testimony of Lisa Penix and Kramer and Shutt. And they all tell you that they take a trip to West Virginia with the body of Steven Spade.  And along the way they tell you that we stopped at a BP Station and you hear various stories about who did what at the BP Station.  Well, the thing about Kramer and Shutt and Penix's testimony is they forget one thing.  They forget about the surveillance cameras that a lot of these gas stations have.  And what they forget was that Shane Rafferty, since he wasn't in the car, would not appear on those videos.

> Now, you heard Shutt and Kramer say they got out of the car.  Shutt stayed in the car. **As a matter of fact, Karmer says, I got out of the car, went into the BP Station, and right behind me was Shane Rafferty.**

> Well, Ladies and Gentlemen, we also ask Mr. Shutt, how long were you at the BP Station?

> 20 to 25 minutes.

> Now you're going to get in all this evidence, and it might even be this.  It's going to be the videotape that you saw here.  Now, the State of Ohio says, well, there's different cameras and we're moving in and out, moving in and out.  **Ask yourselves, if Shane Rafferty is supposed to be at this gas station for 20 to 25 minutes, and according to Kramer he was right behind him when he went in the place, where is Shane Rafferty on that video?  Ask yourselves that.  That's where the phrase "reasonable doubt" starts to creep in.**

Tr. at 1533-35 (emphasis added).  The undersigned has reviewed  William Kramer's testimony, and notes that he did in fact state that the group stopped at the BP Station in West Virginia and that he and Shane got out of the car (Tr. at 876-77) and he specifically stated that "Shane was right behind me when I went in."  Tr. at 878.

-21-

Based upon the foregoing, it is clear that trial counsel addressed the issue related to the clarity of the video.  The undersigned believes that trial counsel's course of action constituted a reasonable strategic decision, even though it was not ultimately successful in persuading the jury that reasonable doubt existed.

As with § IV(C)(1) above, the undersigned notes that Petitioner first raised this purported deficiency in his traverse, leaving Respondent no opportunity to respond.  Petitioner did not claim on direct appeal to the Ninth District Court of Appeals that trial counsel was ineffective for failing to cross examine the state witness regarding the possibility of enhancing the video. *See* ECF Dkt. #8, Ex.3 at 12-16.  Since Petitioner did not raise the issue at his first opportunity on direct appeal to the Ninth District Court of Appeals and he has not addressed the issue here until his traverse, Respondent should have an opportunity to raise a procedural default defense.

Typically, a habeas court reviews the state court's ruling for an unreasonable application of federal law.  In a case such as this, Petitioner, would have to show not only that trial counsel's strategy was unreasonable, but that the state appellate court's finding that his strategy was not unreasonable was itself unreasonable.  28 U.S.C. § 2254(d); *see Mooney v. Trombley,* 2007 WL 2331881 at *21 (E.D.Mich., Aug. 13, 2007), unreported.  Since Petitioner has not fairly presented this issue to the state appellate courts, the appellate courts have not ruled on the soundness of trial counsel's strategy.  This consideration makes the potential of a procedural default defense especially relevant.

Accordingly, the undersigned recommends that the Court dismiss Ground Four due to a lack of merit insofar as it relates to trial counsel's alleged failure to cross-examine state witness on the possibility of enhancing the surveillance video, or in the alternative, afford Respondent an opportunity to raise a procedural default defense..

### (3)  Potential witnesses

Petitioner also alleges that his trial counsel was ineffective because he failed to contact potential witnesses that would have testified on his behalf.   "[C]omplaints of uncalled witnesses are

not favored in federal habeas corpus review because allegations of what the witness would have testified to are largely speculative." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002).  In order to present an ineffective assistance of counsel claim based upon a failure to call a witness, a defendant must make an affirmative showing as to what the missing evidence would have been and prove that the witness' testimony would have produced a different result.  *Malcum v. Burt,* 276 F.Supp.2d 664, 679 (E.D.Mich.,2003) citing *United States ex. rel. Jones v. Chrans,* 187 F.Supp.2d 993, 1009 (N.D.Ill.2002).

Here, Petitioner not only fails to identify the potential witnesses that counsel failed to contact, but he also fails to provide affidavits or support from these individuals as to the testimony that they would have given in order to show that they would have appeared to testify and that their testimony would have been favorable to Petitioner.

Accordingly, the undersigned recommends that the Court find that "[i]n this case, trial counsel's failure to investigate, interview, or present these potential witnesses does not amount to the ineffective assistance of counsel, because Petitioner has failed to indicate the availability of these purported  witnesses or specify the content of their testimony." *See Malcum,* 276 F.Supp.2d at 679, citing *Dell v. Straub,* 194 F.Supp.2d 629, 650 (E.D.Mich.2002) (citations omitted).  The undersigned therefore recommends that the Court dismiss Ground Four insofar as it alleges the ineffective assistance of counsel for failing to investigate and call potential witnesses.

## D.    (Ground Five)  Whether Petitioner's conviction was supported by sufficient evidence

Petitioner contends that the evidence presented at trial was insufficient as a matter of law to support a conviction of aggravated murder, and, as a result, his right to Due Process under the 5th and 14th Amendments to the United States Constitution was violated. ECF Dkt. #1 at 13.  Petitioner reasons that his conviction was based solely on the inconsistent testimony of co-defendants with no physical evidence to support a conviction.  *Id.*  In his traverse, Petitioner further argues that the

testimony against him came from "self confessed murders [sic] who were attempting to garnish a better deal from the state in their attempts to avoid the death penalty."  ECF Dkt. #10 at 5.

An allegation that the verdict was entered upon insufficient evidence states a claim under the due process clause of the Fourteenth Amendment to the United States Constitution.  *Jackson v. Virginia*, 443 U.S. 307, *reh'g denied*, 444 U.S. 890 (1979), *and In re Winship*, 397 U.S. 358 (1970).  On habeas review, the District Court cannot weigh the credibility of the witnesses.  *Walker v. Engle*, 703 F.2d 959, 969.  Nor is the District Court permitted to overturn a conviction merely because it would have acquitted had it acted as the finder of fact.  *Brown v. Davi*s, 752 F.2d 1142, 1147 (6ᵗʰ Cir. 1985), *and Walker,* 703 F.2d at 969.  In order to establish an insufficiency of the evidence claim, the relevant inquiry is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Scott v. Mitchell,* 209 F.3d 854, 885 (6ᵗʰ Cir. 2000), *quoting Jackson,* 443 U.S. at 319. "This requires successful challengers to meet a very high threshold, even with respect to newly-discovered evidence." *Apanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006).  The inquiry is not whether the jury made the *correct* determination of guilt or innocence, but whether it made a *rational* decision to acquit or convict.  *Williams v. Haviland,* No. 1:05CV1014, 2006 WL 456470, *3 (N.D.Ohio Feb. 24, 2006), citing *Herrera v. Collins,* 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).  A court should interfere with a jury verdict only to the extent necessary to guarantee the fundamental protections of due process of law.  *Scott,* 209 F.3d at 885 *quoting Jackson,* 443 U.S. at 319.

Here, Petitioner challenges the lack of physical evidence, as well as the credibility of the state's witnesses.  Neither argument is persuasive.  First, a lack of physical evidence does not merit habeas relief because "[c]ircumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt."  *U.S. v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999) quoting *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir.1986).  Secondly, "attacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence."  *Martin v. Mitchell*, 280 F.3d 594, 618  (6th Cir. 2002).  A federal habeas court may not consider the credibility of the witnesses.  *Jamieson*,427

-24-

F.3d at 402.

In addition, the state appellate court in this case undertook a detailed review of the evidence, highlighting the consistencies between each witness' testimony.  ECF Dkt. #8 ex. 4 at 8-23.  The court ultimately concluded that there was ample evidence to support Petitioner's conviction.  *Id.* at 22.  The appellate court also noted that Petitioner testified and was unable to explain why Shutt, Kramer, Penix, and Keenan would all lie to implicate him.  ECF Dkt. #8, Ex. 4 at 20.  The court explained that Petitioner surmised that they implicated him in order to avoid the death penalty, but the court found his explanation to be "fatally flawed" because Penix confessed to her involvement in the crime before West Virginia police had even identified the victim and by confessing she actually placed the death penalty at issue and virtually guaranteed herself a severe punishment.  *Id.* at 20-21.  Petitioner's bald assertions that the state lacked physical evidence and relied upon non-credible witnesses are insufficient to meet his burden of establishing that the appellate court's ruling was contrary to or involved an unreasonable application of clearly established Federal law.

Accordingly, the undersigned recommends that the Court dismiss Ground Five of the instant petition due to a lack of merit.

### E.    (Ground Six) Whether Petitioner's conviction was against the manifest weight of the evidence

Petitioner contends that the verdicts in his case were against the manifest weight of the evidence and as a result his right to Due Process under the 5th and 14th Amendments to the United States Constitution were violated.  ECF Dkt. #1 at 13.  As with his sufficiency of the evidence claim, Petitioner contends that there was no physical evidence presented to prove his guilt; the only evidence presented was the testimony by co-defendants who had a strong motivation to lie.  *Id.*; ECF Dkt. #10 at 5.

The undersigned recommends that the Court dismiss this ground for relief because a manifest weight of the evidence claim is not cognizable in federal habeas corpus review.  *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir.1985); *Walker v. Timmerman-Cooper*, No. 1:05CV103, 2006 WL 3242101 (S.D. Ohio Oct. 5, 2006).  Manifest weight claims are derived from purely state law whereby the

state appellate court sits as a "thirteenth juror and disagrees with fact finder's resolution of conflicting testimony" and finds that the "jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Tibbs v. Florida*, 457 U.S. 31, 41-47 (1982); *State v. Thompkins*, 78 Ohio St.3d 380, 389, 678 N.E.2d 541, 546-548 (1997)(superseded by state constitutional amendment on other grounds, *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997), cert. denied 523 U.S. 1125 (1998)), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).  Accordingly, Ground Six of the instant petition lacks merit and should be dismissed with prejudice.

### F.    (Ground Seven) Whether Petitioner was denied a fair trial due to cumulative errors

Petitioner contends that the trial court deprived him of his right to a fair trial in violation of the 6th and 14th Amendments to the United States Constitution.  ECF Dkt. #1 at 13.  Petitioner reasons that the cumulative errors in the trial resulted in Petitioner being convicted of aggravated murder without any reliable evidence that he had the requisite intent to cause the death of another or was in fact the principal offender in the commission of this crime.  *Id*.  In his traverse, Petitioner specifically challenges his conviction based upon the cumulative effect of jury taint by pretrial coverage, ineffective assistance of trial counsel, failure to call witnesses, and misconduct on the part of the judge and the state's attorney.  ECF Dkt. #10 at 6.

Claims of cumulative error are not cognizable grounds for habeas relief.  *Millender v. Adams*, 376 F.3d 520, 529  (6th Cir. 2004).  The Sixth Circuit has stated "[t]he Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief."  *Id*.  quoting *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002).  In fact, the *Lorraine* court held that a district court "overstepped its bounds on habeas review" by ruling that the cumulative weight of prosecutorial misconduct and ineffective counsel warranted habeas relief.  *Lorraine*, 291 F.3d at 447.  Accordingly, the undersigned recommends that the Court dismiss Ground Six of the instant petition with prejudice due to a lack of merit.

### G.    (Ground Eight)   Whether Petitioner was deprived of a fair trial due to prosecutorial misconduct

Petitioner alleges that he was denied his right to a fair trial, as guaranteed by the 6th and 14th Amendments to the United States Constitutions.  ECF Dkt. #1 at 13.  Petitioner reasons that "[t]he prosecutor went outside his wide latitude during closing arguments and misstated evidence to Petitioner's detriment."  *Id.*  In his traverse, Petitioner notes that the prosecutor argued in closing that Petitioner helped in cleaning up after a murder and said, "There is a link. . . the only link they want to down play."  ECF Dkt. #10 at 7.  Petitioner contends that the prosecutor was inferring that he was hiding a shop vac at his home, while the shop vac was actually found at Lisa Penix's mother's house.  *Id.*

"In deciding whether prosecutorial misconduct mandates that habeas relief be granted, the Court must apply the harmless error standard." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir.1997). In so doing, the district court must determine if the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  The Sixth Circuit has adopted a two-step approach for determining whether prosecutorial misconduct violates a defendant's due process rights. *Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) citing *United States v. Carter*, 236 F.3d 777, 783 (6th Cir.2001).

First, the district court must consider whether the prosecutor's conduct and remarks were improper. *Macias*, 291 F.3d at 452.  In making this determination, the court should keep in mind that the prosecutor is allowed "to argue reasonable inferences from the evidence," but he or she is not allowed to misstate the evidence. *Id.* quoting *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir.2000) and citing *Carter*, 236 F.3d at 784.  Thus, it is "improper for a prosecutor, during closing arguments, to bring to the attention of the jury any purported facts that are not in evidence and are prejudicial." *Id.* quoting *Byrd*, 209 F.3d at 535.

If the district court determines that the prosecutor's conduct and remarks were improper, then the court must go on to determine whether the impropriety was flagrant, considering the following

-27-

four factors: "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong." *Macias*, 291 F.3d at 452 quoting *Carter*, 236 F.3d at 783.

Additionally, on habeas review, a district court must not consider whether the state court's decision regarding prosecutorial misconduct was wrong, but whether it was an unreasonable application of clearly established federal law. *Macias*, 291 F.3d at 454 citing 28 U.S.C. § 2254(d)(1); *Williams*, 529 U.S. at 411. Accordingly, if a prosecutor's statements are isolated and the evidence against a petitioner is strong, the determination by a state court that a petitioner's due process rights have not been violated is not objectively unreasonable and the writ should be denied. *Id*.

Here, Petitioner alleges that the prosecutor improperly inferred that he was hiding a shop vac in his home. Under the test articulated in *Macias*, the undersigned recommends that the Court find that the prosecutor's comments were improper but not flagrant and did not result in a denial of due process. The prosecutor's arguments were improper because he misstated a fact in evidence that was arguably prejudicial. The Ninth District Court of Appeals stated that "Rafferty is correct that Detective Harrah testified that the shop vac was recovered in Mogadore after Lisa Penix informed him that it was at her mother's home. This minor misstatement, however, cannot be properly labeled prosecutorial misconduct." ECF Dkt. #8, Ex. 4 at 25. The undersigned has reviewed the record and finds that Detective Harrah did testify that he recovered the shop vac from Lisa Penix's mother's home and that the prosecutor did incorrectly state that Detective Harrah recovered the shop vac from the house on Voris Street. Tr. at 963-67, 1555. However, it is not entirely clear that the prosecutor's statements were prejudicial because, as the state appellate court noted, the prosecutor emphasized that the shop vac was used to cover up the murder. ECF Dkt. #8, Ex. 4 at 25. Since Petitioner received a life sentence without the possibility of parole for the aggravated murder charge, the only prejudicial effect of the prosecutor's comment would relate to the tampering charge in Count Nine relating to the basement of the Voris Street house. It would ultimately have no practical effect on

-28-

Petitioner's sentence.  Regardless, out of an abundance of caution, the undersigned recommends that the Court proceed to the second step of the *Macias* analysis.

Turning to the second prong of the *Macias* test, the undersigned finds that the prosecutor's comments were not flagrant.  First, there is no indication that the prosecutor's comments tended to mislead the jury or prejudice Petitioner.  Prior to closing arguments, the trial court instructed the jury that closing arguments were not evidence, and that the jury was to rely on its own recollection of the evidence if it differed from counsels' accounts:

> The attorneys, in making these arguments to you, will be commenting upon the testimony that you've heard and the evidence that has been presented in this case. They, as you, will be recalling the evidence that has been presented.  They will not intentionally try to mislead you.  However, if their recollection of the evidence differs from what your recollection is, you must follow your own recollection.
>
> These final arguments are not to be construed by you as evidence in this case or instructions on the law.  They are, however, intended to help you better understand the contentions of each side and that the issues you have to decide.

Tr. at 1477-78.  The prosecutor stated at the beginning of closing arguments, "As the judge said, what we say – what we say is not evidence. . . Rely on what you recall, not on what we say. . . Rely on your own collective memory."  Tr. at 1479-80.  In fact, immediately before discussing the shop vac, the prosecutor stated, "And the judge has told you, the only evidence comes from the stand and those items right there, not the attorneys, not from what they say."  Tr. at 1555.  Further, the trial court permitted the jurors to take notes, reducing the likelihood of an improper influence on the jury – if the jurors were unsure of the veracity of the prosecutor's statement, they could have referred to their notes.  Tr. at 27.  In fact, during closing arguments, both the prosecutor and defense counsel reminded the jury of its ability to refer to its notes in deliberations.  Tr. at 1478, 1528, 1543.

Second, the prosecutor's remarks related to the shop vac were isolated and not extensive.  As the appellate court noted, the trial transcript encompassed roughly 1,600 pages, and in roughly 50 pages of transcripts covering the prosecutor's closing argument, the shop vac recovered from Mogadore was discussed on only two pages.  ECF Dkt. #8, Ex. 4 at 25.  The court further explained that the state emphasized that the shop vac was used to cover up the murder.  *Id*.  From a review of

-29-

the record, the undersigned agrees that the prosecutor's comments were isolated and minor. *See* Tr. at 1555. Of note, the state appellate court did find that the state did not stress in any manner that there was any significance to location from where the shop vac had been recovered. ECF Dkt. #8, Ex. 4 at 26. The undersigned does not entirely agree with this statement, as the prosecutor stated "The only link they want to downplay is the shop vac, which Detective Harrah got from Voris because that's where Lisa Penix told him it was." Tr. at 1555. It appears that the state did argue that there was significance to where the shop vac was recovered, but the location was significant only because it corroborated Lisa Penix's information. That assertion would remain unchanged regardless of whether the prosecutor had confused the Voris Street address with the Mogadore address. Therefore, the appellate court's error was not an objectively unreasonable error requiring habeas relief.

Third, the Court must determine whether the prosecutor's remarks were deliberately or accidentally made. There is absolutely no indication in the record that the prosecutor deliberately misled the jury. Actually, the prosecutor referred to his notes in attempt to be precise. Accordingly, there is no basis for finding that the prosecutor intended to mislead the jury.

Fourth, the Court must determine whether the evidence against Petitioner was strong. The undersigned recommends that the Court find that the evidence was strong because, as discussed in § IV(D) above, the state appellate court found that ample evidence supported Petitioner's conviction. ECF Dkt. #8, Ex. 4 at 8-23. More specifically, the appellate court recounted the evidence against Petitioner: four co-conspirators testified consistently, implicating Petitioner; forensic evidence was consistent with the co-conspirator's testimony; Bobby Rafferty, Petitioner's cousin, testified that Petitioner confessed the crime to him; and Petitioner's own testimony was "unsubstantiated." *Id.* Accordingly, the undersigned recommends that the Court find that the evidence against Petitioner was strong.

Based on the foregoing, the undersigned also finds that the prosecutor's statements were isolated and the evidence against Petitioner was strong, and, therefore, the determination by the Ninth District Court of Appeals that the comments did not violate Petitioner's due process rights was not

objectively unreasonable.  Accordingly, the undersigned recommends that the Court dismiss Ground Eight with prejudice.

   **H.      (Ground Nine)  Whether Petitioner was denied the right to a fair trial by judicial misconduct**

   Petitioner contends that the trial judge committed judicial misconduct, which deprived him of his right to a fair trial as guaranteed by the 6th and 14th Amendments to the United States Constitutions.   ECF Dkt. #1 at 13.   Petitioner reasons that the trial judge was biased and fundamentally unfair throughout the trial by limiting the amount of time that the trial would last so that she could make her eye doctor appointment, by making non-verbal gestures mocking the defense, by speaking to defense counsel in a harsh tone, and by favoring the prosecution.  *Id*.  In his traverse, Petitioner contends that the judge acted improperly by making non-verbal communications showing bias against Petitioner, such as expressive eye rolling, facial expressions, and modulating her voice to make it harsher when addressing the defense.  ECF Dkt. #10 at 7.  Petitioner requests an evidentiary hearing to examine  video evidence that he is trying to obtain, which he contends will show the judge's eye rolling.  *Id*.

   Reversal by a federal habeas court for judicial misconduct is "only warranted where the conduct of the trial court is 'egregious, and fairly capable of characterization as beyond that necessary to fulfill the role of governor of the trial for the purpose of assuring its proper conduct and of determining questions of law.' "  *Todd v. Stegal*, 40 Fed.Appx. 25, 27 (6th Cir. Apr. 12, 2002), unreported, quoting *United States v. Tilton*, 714 F.2d 642, 645 (6th Cir.1983).  When considering a claim of judicial misconduct on habeas review, the question is not simply whether the trial judge engaged in conduct that might be considered reversible error on direct review, but whether any prejudicial comments and conduct by a judge in a criminal trial amounted to a constitutional violation.  *Id*.  "In considering judicial misconduct on habeas review, we examine the trial judge's behavior in the context of the entire trial to determine whether the behavior was so prejudicial as to violate due process."  *Harrington v. Iowa*, 109 F.3d 1275, 1280 (8th Cir.1997).

-31-

Here, Petitioner has come forth with no evidence that the trial judge engaged in any misconduct.  There is no evidence or indication on the record before the Court to indicate that any of the alleged misconduct occurred.  Further, the state appellate court noted that "none of this alleged misconduct is contained in the record before us. . ."  ECF DKt. #8, Ex. 4 at 26.  In fact, Petitioner acknowledged that fact in his appellate brief: "Appellate Counsel acknowledges that the Appellant's argument in support of this assignment of error rests solely on conduct that is non-verbal and outside the record for the Court's review."  ECF Dkt. #8, Ex. 3 at 23-24.

Plaintiff's request for an evidentiary hearing should also be denied because he failed to diligently attempt to develop the factual basis of his claim.  28 U.S.C. § 2254(e)(2) provides that:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–
>
> > (A) the claim relies on–
> >
> > > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > >
> > > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> >
> > (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).  In order to determine whether a petitioner failed to develop the factual basis for his claim, the district court must determine whether there was a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel.  *Williams v. Taylor*, 529 U.S. 420, 432 (2000).  "Diligence for purposes of the opening clause depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend . . . upon whether those efforts could have been successful."  *Id*.

-32-

at 435.

In the case at bar, Petitioner failed to develop the factual basis for his claim because he never requested an evidentiary hearing in the state courts to develop his judicial misconduct claim. *See* ECF Dkt. #8, Ex. 1-13, specifically, Ex. 3 at 23-24, Ex. 5 at 13-14, Ex. 12 at 8; *See McAdoo v. Elo*, 365 F.3d 487, 500 (6th Cir. 2004)("when a defendant diligently seeks an evidentiary hearing in the state courts in the manner prescribed, but the state courts deny him that opportunity, he can avoid § 2254(e)(2)'s barriers to obtaining a hearing in federal court"). Further, Petitioner has not satisfied his burden under subsection (A)(i) because he does not contend that a retroactive change in law affects his case, and subsection (A)(ii) is inapplicable because his argument is based upon events that occurred at trial. Lastly, Petitioner does not contend that the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense. Accordingly, his request for an evidentiary hearing should be denied.

For the foregoing reasons, the undersigned recommends that the Court dismiss Ground Nine of the instant petition with prejudice.

### I.    (Ground One)  Whether the Ohio Court of Appeals erred in denying Petitioner's Rule 26(B) application to reopen his appeal

Petitioner contends that the Ohio appellate court erred in denying his Rule 26(B) application to reopen his appeal when he demonstrated a "genuine issue" of ineffective assistance of appellate counsel in violation of his rights under the 6th and 14th Amendments to the United States Constitution. ECF Dkt. #1 at 6. Petitioner reasons that the appellate court issued a near boiler-plate denial of his application and erred in denying his motion when his appellate counsel had failed to raise issues of trial counsel's deficient conduct, failed to argue juror bias, and failed to adequately argue that the trial judge committed misconduct. *Id.* Petitioner also contends that the appellate court improperly found that the exculpatory evidence not raised by trial or appellate counsel "did not matter." *Id.* In his traverse, Petitioner again argues that counsel was ineffective for failing to hire an expert witness to prove that he was not in the car that was used to dispose of the murder victim.

-33-

ECF Dkt. #10 at 8.

Respondent contends that Petitioner fails to show that he received ineffective assistance of appellate counsel.  However, the instant petition clearly challenges the appellate court's denial of Petitioner's Rule 26(B) application, not the underlying alleged ineffective assistance.  As discussed above, "a mere error of state law is not a denial of due process."  *Engle,* 456 U.S. at  n. 21 (internal quotation omitted).  Further, "[t]he Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but 'the fundamental elements of fairness in a criminal trial.' " *Rivera v. Illinois*, ___ S.Ct. ___, 2009 WL 815033 at *1( March 31, 2009), slip op., syllabus quoting *Spencer v. Texas,* 385 U.S. 554, 563-564 (1967).

Regardless, insofar as Petitioner challenges the underlying performance of appellate counsel, his claim should fail due to a lack of merit.  A defendant is entitled to the effective assistance of counsel in his first appeal of right.  *Evitts v. Lucey*, 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); *Mapes v. Tate*, 388 F.3d 187, 191 (6th Cir. 2004).  A claim of ineffective assistance of appellate counsel is governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which is the same standard governing the review of a claim for the ineffective assistance of trial counsel.  Hence, in order to prevail on his claims, Petitioner must show that appellate counsel deficiently performed and "the deficient performance prejudiced the defense so as to render the trial unfair and the result unreliable." *Mapes*, 388 F.3d at 191, citing Strickland, 466 U.S. at 687.  In order to establish deficient performance, a petitioner must show that counsel's performance fell below an objective standard of reasonable representation. *Id*. at 688.  In *Mapes v. Coyle*, 171 F.3d 408, 427- 28 (6th Cir.), cert. denied, 528 U.S. 946, 120 S.Ct. 369, 145 L.Ed.2d 284 (1999), the Sixth Circuit Court of Appeals listed eleven questions as matters to be considered in determining whether an attorney on direct appeal acted in accordance with the objective standard of reasonableness in reviewing the deficient performance prong of the ineffective assistance of appellate counsel.  In order to establish prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the

case.  *Id.*; *Williams v. Taylor*, 529 U.S. 362, 390-391 (2000).

Moreover, it must be remembered that appellate counsel is not ineffective if he or she fails to raise every nonfrivolous claim on direct appeal. *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). The process of " 'winnowing out weaker arguments on appeal' " is "the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (quoting Barnes, 463 U.S. at 751-52, 103 S.Ct. 3308). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.1986).

Petitioner's claim of ineffective assistance of appellate counsel is dependent upon the merit of his other claims because he asserts that appellate counsel should have argued juror bias (Ground Three), judicial misconduct (Ground Nine), and ineffective assistance of trial counsel for failing to enhance the surveillance video (Ground Four).  Having found that each of these claims lack merit, the undersigned also finds that it would have been reasonable for appellate counsel not to raise the claims on appeal.  Even so, appellate counsel did raise some of the claims that Petitioner now challenges.  Specifically, appellate counsel argued that the jury had been tainted (ECF Dkt. #8, Ex. 3 at 11-12), and that Petitioner had been prejudiced by judicial misconduct (ECF Dkt. #8, Ex. 3 at 23-24).  Although Petitioner contends that his appellate counsel did not adequately argue the issue of judicial misconduct, he provides no factual or legal basis for that claim.

Since Petitioner cannot show that the claims that he contends appellate counsel should have raised had any merit, he cannot show that appellate counsel fell below an objective standard of reasonableness by foregoing those claims.  Further, Petitioner cannot show a reasonable likelihood of success on these claims and, therefore, is unable to establish prejudice as a result of appellate counsel's choice not to raise them.

Lastly, even if Petitioner could show that appellate counsel's strategy was unreasonable, he would also have to demonstrate that the state appellate court's finding that his strategy was not unreasonable was itself unreasonable.  28 U.S.C. § 2254(d); *see Mooney v. Trombley,* 2007 WL 2331881 at *21 (E.D.Mich., Aug. 13, 2007), unreported.  Petitioner has provided no basis for calling the reasonableness of the state appellate court's ruling into question.  *See* ECF Dkt. #8, Ex. 11. Accordingly, the undersigned recommends that the Court dismiss Ground One of the petition with prejudice.

## VI.      CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice.


DATE: April 17, 2009                              *s/ George J. Limbert*
                                                  GEORGE J. LIMBERT
                                                  UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).